# STATE OF LOUISIANA

# COURT OF APPEAL, THIRD CIRCUIT

## 06-911

TERRANCE BATISTE

VERSUS

JOSE R. GUTIERREZ, ET AL.

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF ST. MARTIN, NO. 68,326-F
HONORABLE KEITH R. COMEAUX, DISTRICT JUDGE

**********

**GLENN B. GREMILLION**
**JUDGE**

**********

Court composed of Glenn B. Gremillion, Elizabeth A. Pickett, and J. David Painter, Judges.

                                        **AFFIRMED.**



**David C. Laborde**
**Bradley G. Frizzell**
**The LaBorde Law Firm**
**P. O. Box 80098**
**Lafayette, LA 70598-0098**
**(337) 261-2617**
**Counsel for Plaintiff/Appellant:**
        Terrance Batiste

**John F. Wilkes, III**
**Lisa E. Mayer**
**Joy C. Rabalais**
**Libby Heinen**
**Borne & Wilkes, L.L.P.**
**P. O. Box 4305**
**Lafayette, LA 70502-4305**
**(337) 232-1604**
**Counsel for Defendants/Appellees**
**Town of Vinton**
**Arthur Phillips**

GREMILLION, Judge.

The plaintiff, Terrence Batiste, appeals the trial court's grant of summary judgment in favor of the defendants, the Town of Vinton and Officer Arthur Phillips. This left Officer Phillips and Vinton as defendants. The trial court held that no genuine issue of material fact exists with regard to whether Officer Phillips breached his duty by failing to arrest or detain the driver of a vehicle who later caused injuries to Batiste as a result of being intoxicated. We affirm.

**FACTS**

On January 22, 2004, Batiste was changing the tire on his employer's truck, which was parked on the east shoulder of Interstate 10 in West Baton Rouge Parish. The truck, with its attached trailer, was located near mile marker 150 on I-10. At approximately 7:30 a.m., the defendant, Jose R. Gutierrez, who was also traveling east on I-10, struck the trailer attached to the truck, throwing Batiste and three other persons onto the grassy shoulder of the road. Blood tests taken after the accident determined that Gutierrez's blood alcohol concentration was 0.19 grams percent. As a result of the accident, he received his third offense DUI.

Batiste filed suit against Gutierrez and Travelers Property Casualty Company of America, the automotive insurer of Batiste's employer, seeking general and punitive damages as result of this accident. Batiste's minor daughter was later added as a plaintiff in this suit. In his second supplemental and amending petition, Batiste named Officer Arthur Phillips, the Town of Vinton, and the Town of Vinton Police Department as defendants. He alleged that Officer Phillips breached the duty owed him when he failed to arrest or detain Gutierrez for driving while intoxicated

1

and for failing to ensure that Gutierrez possessed the required liability insurance when he stopped him at 4:44 a.m. in Vinton, the morning of the accident.

Louisiana Commerce and Trade Association Self-Insurers' Fund intervened in the matter seeking to recover workers' compensation funds paid to Batiste as a result of the accident. Its intervention was later dismissed pursuant to a peremptory exception of prescription. The trial court also dismissed Batiste's request for punitive damages and his claims against the Vinton Police Department as a result of a consent judgment between Batiste, Vinton, and Officer Phillips.

Vinton and Officer Phillips filed a motion for summary judgment alleging that no genuine issues of material fact existed with regard to whether Officer Phillips breached his duty as a peace officer for failing to arrest/detain Gutierrez for driving intoxicated and for not complying with the Louisiana Motor Vehicle Safety Responsibility Law. La.R.S. 32:861(A)(1). Following a hearing, the trial court granted summary judgment in favor of Vinton and Officer Phillips. This appeal by Batiste followed.

## ISSUES

Batiste assigns two errors committed by the trial court in granting summary judgment in favor of Vinton and Officer Phillips. He argues that the trial court erred in finding that he would be unable to satisfy his evidentiary burden of proof at trial and that it erred in granting the motion for summary judgment within ten days of the trial date.

## SUMMARY JUDGMENT

The law pertaining to summary judgment was discussed by the Louisiana

2

Supreme Court in its per curiam opinion in *Hines v. Garrett*, 04-0806, p. 1 (La. 6/25/04), 876 So.2d 764, 765 (alteration in original):

> We review a district court's grant of summary judgment *de novo*, viewing the record and all reasonable inferences that may be drawn from it in the light most favorable to the non-movant. Summary judgment is warranted only if "there is no genuine issue as to material fact and [ ] the mover is entitled to judgment as a matter of law." La.Code Civ.Proc. art. 966(C)(1). In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. All doubts should be resolved in the non-moving party's favor.

The party urging the motion for summary judgment bears the burden of proof. However, if that party will not bear the burden of proof at trial, he need only point out that the opposing party will be unable to prove his claim. He does this by noting that the opposing party will be unable to factually prove an element essential of his claim. La.Code Civ.P. art. 966(C)(2). Once this occurs, the burden shifts to the opposing party to "produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial." La.Civ.Code art. 966(C)(2). If the opposing party fails in this particular, no genuine issue of material fact exists and summary judgment is appropriate.

In *Wellman v. Evans*, 03-1720, pp. 5-7 (La.App. 3 Cir. 6/16/04), 876 So.2d 954, 958-59, *writ denied*, 04-1760 (La. 10/15/04), 883 So.2d 1057, we discussed both the duty-risk analysis and the duty owed by police officers to the public:

> The liability of a police officer is determined using the duty/risk analysis. *Mathieu v. Imperial Toy Corp.*, 94-952 (La.11/30/94), 646 So.2d 318. For a plaintiff to recover, he must prove the defendant had a duty to conform his conduct to a specific standard of care; he failed to conform his conduct to that standard; that substandard conduct was a

3

cause-in-fact of the injury, the substandard conduct was a legal cause of the injury; and damages. A negative answer to any of the inquiries of the duty-risk analysis results in a determination of no liability. *Id.* at 322.

. . . .

A police officer, in carrying out his authority to enforce laws, has a duty to perform his function with due regard for the safety of all citizens who will be affected by his action. *Hardy v. Bowie*, 98-2821 (La.9/8/99), 744 So.2d 606. An officer must act reasonably to protect life and limb, to refrain from causing injury or harm, and to exercise respect and concern for the well being of those he is employed to protect. *Syrie v. Schilhab*, 96-1027 (La.5/20/97), 693 So.2d 1173. In considering whether an officer breached his duty, the court's task is not to determine whether the officer should have acted differently or if there were better options available, but only to determine whether his actions were reasonable under the totality of the circumstances. *Syrie*, 693 So.2d 1173; *Mathieu*, 646 So.2d 318.

In dealing with traffic, once an "officer becomes aware of a dangerous traffic situation, he has the affirmative duty to ensure that motorists are not subjected to unreasonable risks of harm." *Oubre v. Eslaih*, 03-1133, p. 10 (La. 2/6/04), 869 So.2d 71, 77.

In support of their motion, Officer Phillips and Vinton introduced his affidavit into evidence. Therein, he stated that he issued Gutierrez a traffic citation for traveling eighty-five miles per hour in a seventy mile per hour speed zone. Prior to doing so, he stated that he noticed nothing about Gutierrez's driving or actions to put him on notice that he was intoxicated. He stated that Gutierrez did not appear to be under the influence of alcohol when he exited his vehicle, when he spoke, or in his actions. He further stated that he smelled no alcohol on Gutierrez's breath when sitting in close contact to him in his police unit. Finally, Officer Phillips stated that it not his regular practice to request proof of insurance when citing the driver of a vehicle registered in a state other than Louisiana. In this instance, Gutierrez's vehicle

4

was registered in Texas.

In opposition, Batiste introduced several depositions into evidence. Officer Phillips testified that after first stopping him, Gutierrez exited his truck, immediately put his hands up, and had to be told twice to come to his police unit. He stated that these actions were not unusual, as Gutierrez was Hispanic and he did not believe that he understood English as well as he spoke it. Officer Phillips stated that he asked for Gutierrez's license, which was valid, but did not ask him for proof of insurance. He stated that unless he suspects criminal activity or that an accident has occurred, he is not required to ask an out-of-state driver for proof of insurance or vehicle registration, as he cannot enforce out-of-state policies or procedures. He further stated that no Vinton policy required him to approach Gutierrez's vehicle after he stopped it.

Officer Phillips testified that had he had a reasonable suspicion that Gutierrez was intoxicated, he would have detained him longer in order to perform a more thorough investigation. However, he stated that he had no such suspicion in this instance. He said that he asked Gutierrez why he was driving fast and was told that he was trying to get to his job in North Carolina. He asked Gutierrez if he had ever been arrested and, as best he could recall, said that this was answered in the negative. He further stated that he received no hits on the National Crime Information Computer system with regard to Gutierrez having any prior criminal history. Officer Phillips stated that as Gutierrez had a North Carolina driver's license and a Texas registered truck, he asked him to sit in his police unit while he checked his information. He said that he also does this so that he can increase his sense of

smell by sitting next to a driver in a closed environment. In this instance, he stated that all he noticed was that Gutierrez had been drinking coffee.

Officer Phillips stated that he was unaware that Gutierrez had two prior DUI offenses at the time he stopped him. However, he stated that had he known this, he would not have asked Gutierrez for his vehicle registration and proof of insurance as he had no reasonable suspicion that he was intoxicated at the time of the stop. He testified that he did not believe Gutierrez was intoxicated as he did not stumble, had no trouble producing his papers, and did not act or drive erratically when he initially stopped him.

Gutierrez testified that he was traveling from his home in New Braunfels, Texas to his job in North Carolina. At the time, he said that he had with him an ice chest and twenty beers. He stated that he drank approximately four beers between 4:00 and 8:00 p.m. on the afternoon of the January 21, 2004. He said that he left his home at about midnight and drove from New Braunfels to Sealy, Texas, where he stopped to buy coffee. He stated that upon reaching Vinton, he stopped and bought more coffee, prior to being stopped by Officer Phillips.

Gutierrez stated that he was not intoxicated at the time of the accident. In addition to the beer, he testified that he took a hydrocodone on the morning of January 21, 2004, for back pain. Gutierrez testified that he has not drunk alcohol on a regular basis since receiving a 1998 DUI in Texas. He received another DUI in 1990 or 1994, also in Texas.

Gutierrez testified that Officer Phillips did not ask him for his vehicle registration papers, insurance papers, or look inside his vehicle. He stated that other

6

than being tired, he did not have trouble getting out of his truck or walking at the time he was stopped. With regard to the accident, Gutierrez said that he did not remember if he was speeding before the accident, as he fell asleep, nor could he recall whether he wove in and out of vehicles, passed on the shoulder, or hit the rail of a bridge. He stated that he made no stops between Vinton and Baton Rouge, and did not recall telling the investigating officer that he began drinking at approximately 3:00 or 4:00 a.m. that morning.

Batiste also introduced the deposition of Dr. Francis Ragan, an associate professor of pathology at Louisiana State University Health Sciences Center and a Director of Clinical Pharmacology/Toxicology Laboratory at Charity Hospital Medical Center of Louisiana. He testified that Gutierrez's serum ethanol concentration after the accident at 8:50 a.m., was 245 milligrams per deciliter, which is equivalent to a blood ethanol concentration of 196 milligrams per deciliter or 0.19 gram percent. He stated that for purposes of a DUI, Gutierrez' blood alcohol level would be at 0.19. Dr. Ragan testified that there was 1.2 hours between the accident and the ethanol testing and 4.1 hours between the Vinton traffic stop and the testing. Thus, he stated that Gutierrez's blood alcohol level at the time of the Vinton stop would have been between the range of .23 and .31. At the time of the deposition, Dr. Ragan stated that he had been unable to watch the video tape recorded in conjunction with Officer Phillips' traffic of Gutierrez.

Attached to a letter from Dr. Ragan to Batiste's counsel was a list of the stages of influence. Dr. Ragan stated that Gutierrez should have exhibited signs of being within the excitement stage of influence at the time he was stopped in Vinton.

7

This stage occurs when a person's blood ethanol concentration level is between 0.09 to 0.25. During this stage, a person's exhibits emotional instability, loss of critical judgment, and impairment of perception, memory, and comprehension. They will also exhibit decreased sensitory response, increased reaction time, reduced visual acuity, peripheral vision and glare recovery, sensory-motor in coordination, impaired balance, and drowsiness. Dr. Ragan testified that a person in this stage will have a tendancy to cry easily, will be unable to see as sharply as normal, will take longer to recover from the glare of lights, will wobble, will be unable to perform motor skills, and will be sleepy. He felt that if a person weighed 165 pounds and had drunk enough to reach a blood ethanol level of .20, an officer sitting next to that person should notice the odor of alcohol, which he stated emanates from both their breath and the pores of their body.

Dr. Ragan stated that the confusion stage occurs when a person's blood ethanol level is between 0.18 to 0.30. At this stage, the person exhibits disorientation, mental confusion, possibly dizziness, exaggerated emotional states, and disturbances of vision and perception of color, form, motion, and dimensions. They also exhibit an increased pain threshold, increased muscular incoordination, staggering gate, slurred speech, apathy, and lethargy. Dr. Ragan testified that Gutierrez's condition should have been well within this stage at the time Officer Phillips stopped him in Vinton. In this stage, he stated that the person will start staggering, and have a tendancy to be unable to stand straight or to stay still.

Finally, Batiste introduced the affidavit of Kermit W. Smith, Jr., a former Louisiana State Trooper. Smith stated that based on his personal knowledge, Officer

Phillips failed in his duty when he stopped Gutierrez in the following ways:

1. Failed to request proof of compulsory motor vehicle liability insurance.

2. Failed to visually inspect cab of Gutierrez's vehicle.

3. Failed to conduct field sobriety test on Gutierrez based on:

   a. Gutierrez failed to follow commands.

   b. Gutierrez was nervous.

   c. Gutierrez returned to the cab of his truck to drink coffee when he was ordered to remain at the back of the truck.

   d. Gutierrez failed to follow commands when Officer Phillips told him to enter his police vehicle.

   e. Gutierrez had to support self on the bed of the truck while Officer Phillips radioed information.

   f. Gutierrez driving eighty-five miles per hour in a seventy mile-per-hour-speed zone at 4:00 a.m.

   g. Gutierrez had Texas tags and a North Carolina driver's license.

After watching the video tape of the Vinton traffic stop, we agree with the trial court that the actions of Gutierrez at that time were insufficient to alert Officer Phillips that he was intoxicated. Gutierrez did not exhibit any of the signs discussed by Dr. Ragan occurring within either the excitement or confusion stages of influence, both of which stages he stated Gutierrez should have been within based on a calculated blood alcohol level between .23 to .31. Gutierrez did not appear to be driving erratically while being stopped and he was able to exit his vehicle and easily follow the instructions as given to him by Officer Phillips. Further, Officer Phillips testified that he did not smell alcohol on Gutierrez when seated next to him in his

9

police unit, which Dr. Ragan felt he should easily detect if his blood alcohol level was at least .20. Based on the following observations, we find that the trial court correctly granted summary judgment in favor of Vinton and Officer Phillips, finding that Batiste would be unable to prove that Officer Phillips breached his duty of care in failing to arrest or detain Gutierrez due to intoxication.

We further find no merit in Batiste's argument that Officer Phillips had a duty to impound Gutierrez's vehicle as he did not possess proof of insurance. The owner of a vehicle registered in Louisiana is not allowed to operate that vehicle unless he can provide proof of insurance as provided by La.R.S. 32:863.1(A). If the driver is stopped by an officer for any reason and is unable to provide proof of insurance, then the officer is allowed to impound the vehicle and issue a notice of noncompliance to the driver. La.R.S. 32:863.1(B), (C). However, with regard to motor vehicles registered in another state, La.R.S. 32:863.1(I) only requires these procedures be followed if the vehicle is involved in a traffic accident or collision in Louisiana.

In this instance, Officer Phillips was not required to request proof of insurance when he stopped Gutierrez as a result of a speeding violation. Moreover, Gutierrez was not required to present such proof until he was involved in the accident which is the subject matter of this suit. Therefore, we find that the trial court correctly granted summary judgment in favor of Vinton and Officer Phillips by finding that Officer Phillips did not have a duty to request this information from Gutierrez.

## TIMELINESS OF SUMMARY JUDGMENT

In his next assignment of error, Batiste argues that the trial court erred in granting the summary judgment on November 14, 2005, a day before the trial was to begin on November 15, 2005.

The trial court initially granted the motion for summary judgment on November 14, 2005. The motion was revisited on November 16, 2005, during a hearing on an exception of prescription. At that time, the following colloquy took place before the trial court and counsel:

BY MR. LABORDE:

I went back and read the Code of Civil Procedure. The Code of Civil Procedure, Article 966, a summary judgment article, prohibits a court from granting a summary judgment ten days prior to trial.

BY THE COURT:

The problem with that, though, is that it's (sic) been set several times.

BY MR. LABORDE:

I realize that, Your Honor. I don't want to get to the court of appeal the day of trial and have them send it back on those grounds.

BY THE COURT:

The reason it was heard so close to the trial date is because it had been filed by Mr. Wilkes many months ago. Is that correct?

BY MR. WILKES:

Yes, and it was set three times.

BY THE COURT:

I granted continuances in deference to you. That's the only reason that I heard the summary judgment so late. I think because of those facts and because of the fact that you attempted to find Mr. Gutierrez to

11

depose him, I think there's some leeway in there. I'm going to go ahead and grant the summary judgment anyway for those reasons.

I granted the summary judgment, so therefore the trial date is gone. Y'all can take it up on appeal. If I'm wrong, I'm wrong. So be it.

Louisiana Code Civil Procedure Article 966(D) provides, "The court shall hear and render judgment on the motion for summary judgment within a reasonable time, but in any even judgment on the motion shall be rendered at least ten days prior to trial." However, some courts have determined whether the delay in hearing the motion will result in prejudice to the opposing party or whether the delay was caused by the opposing party before deciding whether to vacate a judgment rendered in violation of Article 966(D). *See Lassere v. State, Department of Health & Hospital, Office of Public Health*, 00-306 (La.App. 1 Cir. 3/28/01), 808 So.2d 513.

The motion for summary judgment was originally set for hearing on June 15, 2005. On June 8, 2005, Travelers sought and was granted a continuance to July 22, 2005. On July 13, 2005, a continuance was granted to Vinton and Officer Phillips, moving the hearing to August 24, 2005. At some point and for a reason not contained in the record, the hearing was changed to October 7, 2005. On October 13, 2005, Vinton and Officer Phillips filed a motion and order for an expedited hearing on the motion for summary judgment. The hearing was then set for November 10, 2005. It was rescheduled on the court's own motion to November 14, 2005.

Although not clear from the record, it is obvious from the discussion between the trial court and Batiste's counsel, that the trial court continued the hearing on more than one occasion to allow him more time to depose Gutierrez. Based on this, we find that the delay in hearing the motion was based in part on Batiste's own

12

actions.  Accordingly, we find no error in the trial court's grant of summary judgment one day prior to the start of trial.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed. The costs of this appeal are assessed to the plaintiff-appellant, Terrence Batiste.

**AFFIRMED.**